**AMERICAN HEALTH AND LIFE INSURANCE COMPANY**

v.

**AMERICAN FAMILY LIFE ASSURANCE COMPANY OF NEW YORK.**

Civ. No. JFM–86–901.

United States District Court, D. Maryland.

Sept. 30, 1986.

---

**7.** Ficker Affidavit at para. 6; supported by testimony at the trial on the merits. The Court so finds.

**622**

John B. Sinclair, Baltimore, Md., for plaintiff.

Malcolm A. Hoffmann, New York City, Lawrence S. Greenwald, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

This action arises from a stock purchase agreement (and related tax agreement) under which plaintiff, American Health and Life Insurance Company, sold the stock of one of its subsidiaries, American Health and Life Insurance Company of New York ("AHL–NY") to American Family Life Assurance Company of Columbus ("AF-LAC"). Plaintiff asserts a claim against its former subsidiary, now named American Family Life Assurance Company of New York, for approximately $27,000 due under the tax agreement. Defendant has asserted a counterclaim for damages in the approximate amount of $34,000 arising from a misrepresentation allegedly made by plaintiff in connection with the stock sale.[1]

Plaintiff initially moved for summary judgment on defendant's counterclaim. Subsequently, based upon the papers submitted by defendant in opposing plaintiff's initial motion, plaintiff filed a second motion for summary judgment on its own claim. Both motions will be granted.

Plaintiff and AFLAC entered into the stock purchase agreement on October 10, 1983. Under the agreement plaintiff was to deliver to AFLAC within three months of closing an audited balance sheet showing the financial condition of AHL–NY as of March 31, 1984. The parties agreed that the stockholders equity amount on this audited balance sheet would form the basis for any adjustments to the purchase price.

Defendant claims that there were two errors in the balance sheet. First, a cash entry reflecting claims drafts was allegedly overstated by $19,475.90. Defendant alleges that included in this entry were twenty-two claims drafts which had been issued and paid prior to the acquisition date but which had not been recorded by AHL–NY in its books. Second, defendant alleges that the agent debit balance (reflecting commissions which had been advanced but which for a variety of reasons had become unearned by agents and constituted credits against future commissions payable) was overstated by $23,486.00.

For purposes of its summary judgment motion, plaintiff assumes that defendant's allegations are correct. Plaintiff's position is that under the terms of the stock purchase agreement the parties agreed to accept as "binding and final" the figure for total stockholders equity stated in the audited balance sheet to be prepared by Peat Marwick Mitchell & Co. Section 1.2(a) of the stock purchase agreement expressly so provides. Under that section a dispute of the stockholders equity figure is not even permitted to be submitted to binding arbitration as all other disputes under the agreement are required to be. *See* Section 10.10.

Defendant points to several sections of the stock purchase agreement to support a contention that the parties warranted that they would not make material misrepresentations to one another. It is clear, however, that the overstatements of which defendant complains are not the type of misrepresentations contemplated by these provisions. The overstatements total approximately $34,000 and the total stockholders equity was approximately $5,411,000.00. Thus, the overstatements were self-evidently not material. Moreover, even defendant —which has not hesitated to raise other frivolous defenses—has made no allegation that plaintiff intentionally withheld information from Peat Marwick during the course of the audit. The very purpose of

---

**1.** AFLAC assigned to defendant any and all rights which it has against plaintiff concerning

the stock sale.

the audit was to uncover and resolve such matters as defendant has now put into dispute. If, in fact, there were material overstatements of assets on the balance sheet, defendant's cause of action would be against Peat Marwick.

Plaintiff's claim against defendant is for $26,959.68 representing monies due under an agreement entered into by the parties on September 3, 1985 concerning the computation of their respective entitlements to capital loss carryforwards for the tax year 1984. Plaintiff contends that in its papers opposing plaintiff's motion for summary judgment on the counterclaim, defendant has admitted that this amount is due.

This contention is well-founded. In an affidavit which he has submitted, Leonard J. Jagoda, the vice-president of financial services of AFLAC and treasurer of defendant, twice has acknowledged the existence of the debt. In paragraph eighteen he states that during a conversation which he had had with a representative of plaintiff, he "explained that AFL–NY had a liability to AHL [plaintiff] for the taxes and that AHL had a liability to AFLAC on the agents' debit balances and claim drafts and that we should settle the matter." In paragraph twenty-two he refers to a letter which he sent to a representative of plaintiff on February 17, 1986 in which he "explained ... that the only course left to me was to offset the receivables *against the liability*." The February 17, 1986 letter itself, which is attached to Jagoda's affidavit, is to the same effect. In that letter Jagoda said "should American Health and Life choose not to resolve all outstanding issues by February 28, 1986, American Family has no alternative but to offset the $26,959.57 liability due American Health and Life of Baltimore against the receivable due American Family."

It is clear from these statements made by one of defendant's own vice-presidents that defendant's only defense to plaintiff's claim under the tax agreement is the alleged offset stated in the counterclaim. Since that offset is without basis, defendant's liability is fixed.

In opposing the motion for summary judgment on the counterclaim defendant requests that, in the event that the Court should find its position as stated to be unmeritorious, it be permitted to amend its counterclaim to plead that plaintiff orally agreed, subsequent to and apart from the stock purchase agreement, to make good on the overstatement caused by the claim drafts and agent debit balances. Understandably and justifiably, plaintiff vigorously opposes this request. It is inconceivable that this alleged oral agreement was not, as defendant contends, brought to defense counsel's attention until after the answer and counterclaim were filed. Particularly in light of the clear lack of merit of defendant's other defenses, the inference is inescapable that this alleged oral agreement constitutes a litigation afterthought. In any event, given defendant's history of delay and the lack of any reasonable explanation for the alleged oral agreement not having been brought to counsel's attention before the answer and counterclaim were filed, the motion to amend is denied.

A separate order effecting the rulings made in the memorandum is being entered herewith. Because the record does not clearly reflect the date on which the $26,-959.27 due under the tax agreement became payable, the judgment order does not include any amount for pre-judgment interest. If, within ten days of the date of the order, plaintiff submits (a) an affidavit demonstrating when the $26,959.27 became payable, and (b) a proposed form of amended order, the Court will enter an amended order granting pre-judgment interest at the rate of ten percent.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 30th day of September 1986

ORDERED

1. Plaintiff's motion for summary judgment on its claim against defendant is granted;

2. Plaintiff's motion for summary judgment on defendant's counterclaim is granted;

3. Defendant's motion to amend its answer and counterclaim is denied;

4. Judgment is entered in favor of plaintiff in the amount of $26,959.57; and

5. Costs are to be paid by defendant.